**In the Matter of Allen R. HOWE, Debtor.**

**Bankruptcy No. MM13–81–02104.**

United States Bankruptcy Court, W. D. Wisconsin.

June 16, 1982.

Kenneth J. Doran, Doran Law Offices, Madison, Wis., for debtor.

James D. Sweet, Kassner & Sweet, Madison, Wis., for creditor.

Jerry J. Armstrong, Madison, Wis., trustee.

## MEMORANDUM DECISION AND ORDER

ROBERT D. MARTIN, Bankruptcy Judge.

On December 3, 1981, debtor Allen R. Howe filed a petition in bankruptcy under chapter 13. Howe listed in his schedule of exempt property a house and land located in Lake Mills, Wisconsin, claimed as a homestead pursuant to Wis.Stat. § 815.20. Prior to his June 29, 1979 marriage, Howe had owned and resided on this property. At all relevant times thereafter, the Howes resided together on the property. After his marriage, Howe entered into the following loan agreements with the Bank of Deerfield, ("the Bank"):

1. A note, dated December 14, 1979, executed by Allen R. Howe Construction, Inc. ("the corporation") and personally guaranteed by Howe in the principal amount of $98,000.00.

2. A consumer single payment note, dated May 19, 1980 and due on October 16, 1980, in the amount of $4,000.00.

3. A note, dated May 19, 1980, executed by the corporation and personally guaranteed by Howe in the amount of $13,000.00.

4. A consumer single payment note, dated June 13, 1980, and due on October 16, 1980, in the amount of $6,800.00.

On April 8, 1980, Howe executed and delivered to the Bank a real estate security agreement covering the homestead, which by its terms secured all past, present and future indebtedness whether or not covered by other mortgages or mortgage notes. Neither funds advanced with the real estate security agreement nor any funds advanced under other notes secured by that agreement were used to purchase the homestead. Mrs. Howe did not sign the real estate security agreement or any of the notes to

the Bank. It does not appear from the stipulation of facts that Mrs. Howe was made a party to the notes or the real estate security agreement by any separate writing, and it is assumed that she was not.

The notes to the Bank were declared in default on June 10, 1981. The notes accelerated on default were not paid.

The present dispute concerns the validity of the Bank's security interest in the homestead. Howe argues that Mrs. Howe's failure to join in the agreement renders it invalid under Wis.Stat. § 706.02(1)(f). The Bank counters that Wis.Stat. § 706.02(1)(f) applies only where the non-joining spouse owns an interest in the homestead property in question. Thus, the Bank argues that because the homestead is owned solely by Howe, only his signature was required to effectuate the security agreement.

Wis.Stat. § 706.02(1)(f) provides

Formal requisites. (1) Transactions under s. 706.01(1) shall not be valid unless evidenced by a conveyance which:

(f) Is signed, or joined in by separate conveyance, by or on behalf of each spouse, if the conveyance alienates any interest of a married person in a homestead under s. 706.01(7) except conveyances between spouses, but on a purchase money mortgage pledging that property as security only the purchaser need sign the mortgage.

The Bank bases its argument that this section applies only when the homestead is jointly owned on a legislative comment to Wis.Stat. § 706.02(1)(f): "Comment: [C]onveyances of homesteads held in sold [sic] name of one spouse do not require the other spouse to join." The legislative comment on which the Bank relies cannot be accepted as authority on the meaning of Wis.Stat. § 706.02(1)(f). Comment, sub. (2) was drafted by the Board of Governors of the State Bar of Wisconsin, not by the Wisconsin legislature. According to the Wisconsin Legislative Reference Bureau it cannot be ascertained that the comment was debated or even looked at by the legislature.

Wis.Stat. § 706.02(1)(f) is derived from Wis.Stat. § 235.01(2) and (3) (1979–1980) which provided:

(2) No mortgage or other alienation by a married man of his homestead, exempt by law from execution, or any interest therein, legal or equitable, present or future, by deed or otherwise, shall be valid without his wife's consent, evidenced by her act of joining in the same deed, mortgage or other conveyance, or by her act of executing a separate deed, mortgage or conveyance, except a conveyance from husband to wife.

(3) No mortgage or other alienation by a married woman of any interest, legal or equitable, present or future, by deed or otherwise, in a homestead held by her and her husband as joint tenants, shall be valid without her husband's consent, evidenced by his act of joining in the same conveyance or mortgage or executing a separate conveyance or mortgage of the same nature as the wife's except a conveyance from wife to husband.

The present statute eliminates the different protection afforded husbands and wives under the old statutory scheme. It is significant that the legislature chose not to perpetuate the language of Wis.Stat. § 235.-01(3), which explicitly made the husband's signature necessary only where the homestead is held in joint tenancy. Rather than limit the application of the section to jointly owned property, the legislature provided that "any interest" of a married person in a homestead could not be alienated without the spouse's signature. Had the court meant only "an interest in jointly held property" it would have been a simple matter to have retained the language of Wis. Stat. § 235.01(3). Further, the exception for purchase-money security agreements in Wis.Stat. § 706.02(1)(f) which requires only the signature of the purchaser, would be rendered superfluous if the section were intended to have the limited application advanced by the Bank.

Unfortunately, there are no Wisconsin cases which involve the alienation of solely owned property, without the spouse's consent, under the law as presently enacted. However, two cases involving solely owned

property, which arose under Wis.Stat. § 706.02's predecessor, provide useful guidance. In *Cumps v. Kijo*, 104 Wis. 656, 80 N.W. 937 (1899) the validity of a conveyance by a husband of his solely owned [1] homestead was disputed. The wife did not join in the conveyance. The court ruled the conveyance ineffective under § 235.01(2) and cited the public policy behind the statute:

> The policy of the statute indicated is ... to protect the home for the benefit of the family and every member of it,—a beneficient policy of the highest character, calling for a broad, liberal application of the statute, so as to carry it out, fully, in letter and spirit.... Such right is placed high above the reach of any such dangers by the absolute disability to alienate the homestead in any manner, except by a joint conveyance of some kind, signed by the husband and wife. The disability of the husband to otherwise convey the homestead is as complete as if it were not alienable at all.... 104 Wis. at 662, 80 N.W. 937.

Similarly, *Rosenthal v. Pleck*, 166 Wis. 598, 166 N.W. 445 (1918) involved a contract to convey land owned solely by the grantor.[2] The contract was not signed by the grantor's wife. The court ruled that the conveyance was ineffective due to the lack of the wife's signature and stated:

> The legislative thought was that it is contrary to public policy to permit the husband alone to alienate the homestead in any manner, ... because to stop short of that would be to emasculate the essential feature of the law, which is the conservation of the homestead for the family. 166 Wis. at 600, 166 N.W. 445.

Following the 1977 amendment, the Wisconsin Supreme Court, in *Glinski v. Sheldon*, 88 Wis.2d 509, 276 N.W.2d 815 (1979) quoted approvingly the policy statements made by the *Cumps* and *Rosenthal* courts. The court further reaffirmed the family protectionist policy by stating:

The intent of the legislature in enacting sec. 706.02(1)(f) was that the homestead requirement be used to protect the family unit.... 88 Wis.2d at 524, 276 N.W.2d 815.

Even more recently, *State Bank of Drummond v. Christophersen*, 93 Wis.2d 148, 158, 286 N.W.2d 547 (1980), the court reaffirmed the *Rosenthal* policy statement.

The Wisconsin Constitution further supports the maintenance of a barrier to the free alienation of homestead by one spouse:

> The privilege of the debtor to enjoy the necessary comforts of life shall be recognized by wholesome laws, exempting a reasonable amount of property from seizure or sale for the payment of any debt or liability hereafter contracted. Art. I, sec. 17.

In *Comstock v. Bechtel*, 63 Wis. 656, 24 N.W. 465 (1885), the Wisconsin Supreme Court in interpreting Article I, Section 17 stated:

> Our exemption laws were enacted in obedience to the mandate of the constitution.... This mandate and these laws are grounded in the soundest considerations of public policy, in that they are designed to secure not only to the debtor, but to his family, the necessary comforts of life, as against his creditors; thus protecting and guarding the highest interests both of the individual citizen and the family, the benefits of which to the state can scarcely be overrated. 63 Wis. at 662, 24 N.W. 465.

■ The whole emphasis of Wis.Stat. § 706.02(1)(f) including the 1977 amendment is the protection of the debtor and his family by exempting a certain asset to prevent the family unit from suffering undue financial hardship. In the present case the family protectionist policy is served only by reading Wis.Stat. § 706.02(1)(f) as requiring the signatures of both spouses on any conveyance of property which serves as a family's homestead.

---

1. Both the appellant's and respondent's brief filed with the Wisconsin Supreme Court agreed that Denis Kijo was the sole owner of the property in question.

2. The appellant's brief states that the property was owned solely by the husband.

Wis.Stat. § 815.20(1) defines a homestead for purposes of the exemption from execution:

> [Property] selected by a resident owner and occupied by him shall be exempt from execution ... to the amount of $25,000.... Such exemption extends to land owned by husband and wife jointly or in common....

■ At first glance it would appear that Wis.Stat. § 815.20(1) limits the use of a homestead exemption by both spouses to land owned jointly or in common. The Bank has argued that if both spouses cannot take a homestead exemption on property owned solely by one of the spouses, then Wis.Stat. § 706.02(1)(f)'s dual signature requirement does not apply. However, the cases interpreting the homestead exemption hold that the reference to forms of ownership does not operate as a limitation but rather as an extension of the types of property ownership which may be the subject of a homestead exemption. The statute does not, nor was it intended to prevent spouses from both claiming a homestead exemption in property owned by only one.

In *In Re Blodgett*, 115 F.Supp. 33 (E.D. Wis.1953) the Eastern District of Wisconsin identified the Wisconsin legislative purpose in adding language about spouses in Wis. Stat. § 272.20 (the predecessor of Wis.Stat. § 815.20(1))

> In the case of *West v. Ward*, 1870, 26 Wis. 579, the court held that to constitute a homestead the land must be owned in severalty, that an undivided interest in land could not constitute a homestead. It was to remedy this defect that the statute [Wis.Stat. § 272.20] was amended so as to include the reference to property owned by husband and wife, jointly or in common. 115 F.Supp. at 36.

Thus, the very contention which the Bank puts forth in this case has been previously and compellingly rejected. Both the *Cumps* and *Rosenthal* cases were decided after the effective date of the 1878 statute. In both those cases the Wisconsin Supreme Court voided the homestead conveyance for want of the wife's signature.

Three additional statutes are contended by the Bank to support its argument that Mrs. Howe need not sign the security agreement. Under these statutes, property owned solely by a Wisconsin female prior to marriage retains its original character after marriage, and is not subject to disposal by her husband,[3] and men and women are given equal property rights.[4] The Bank argues that because Wis.Stat. § 766.15 entitles a Wisconsin male to the same rights as a Wisconsin female under Wis.Stats. §§ 766.01 and 766.02, Wis.Stat. § 706.02(1)(f) must be interpreted as allowing a Wisconsin male to encumber his solely owned property without first obtaining his wife's signature or permission.

■ The Bank seeks too much. Section 766 was specifically amended in 1975 to make it neutral as to gender, where it had previously favored women. Consequently, while Wis.Stat. § 766.15 does give Wisconsin males additional rights, it does not give Wisconsin men the rights the Bank suggests. It imposes the same dual spouse signature requirement on both spouses in the alienation of real estate.

■ Finally, the Bank argues that while the mortgage may be void as to Mrs. Howe, it remains in force against Howe. However, the Wisconsin Supreme Court has made it clear that the conveyance of a

---

3. Wis.Stat. § 766.01. "The real estate of every description ... of any female now married shall not be subject to the disposal of her husband, but shall be her sole and separate property as if she were unmarried." Wis.Stat. § 766.-02. "The real and personal property of any female who may hereafter marry and which she shall own at the time of marriage ... shall not be subject to the disposal of her husband nor be liable for his debts and shall continue her sole and separate property."

4. Wis.Stat. § 766.15. "Women and men shall have the same rights and privileges under the law in the exercise of ... holding and conveying property.... The various courts ... shall construe the statutes so that words importing one gender extend and may be applied to any gender consistent with the manifest intent of the legislature."

homestead interest which has not been signed by the grantor's spouse in accordance with Wis.Stat. § 706.02(1)(f) is totally void as to both spouses. *Hait v. Houle,* 19 Wis. 496 (1865). In *Hait,* the court considered a predecessor statute's effect on a solely owned homestead and stated

> [A]s it is declared by statute that a mortgage of the homestead shall not be valid without the signature of the wife, it seems to follow, as to the forty acres comprising the homestead, that the mortgage cannot be enforced against either of the mortgagors. 19 Wis. at 499–500.

More recently in *State Bank of Drummond v. Christophersen, infra,* the court ruled on Wis.Stat. § 706.02(1)(f) and stated:

> A transaction involving jointly held homestead property which is entered into without conformity with the requirements of sec. 706.02(1)(f), Stats., is void and may not be enforced against either the signing or nonsigning spouse. 93 Wis.2d at 157.

Upon consideration of the motion of the Bank for dismissal, having concluded that the Bank is not secured by its real estate security agreement identifying the homestead, it appears that the debtor's unsecured claims are in excess of the amount allowed under 11 U.S.C. § 109(e) for a debtor proceeding under chapter 13. Therefore, on the foregoing findings and conclusions,

IT IS HEREBY ORDERED that:

1. The debtor's chapter 13 petition be dismissed for want of jurisdiction.

2. The debtor is given a period of 10 days from the issuance of this order to convert the chapter 13 petition to a chapter 7 petition.